# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | | |
|---|---|---|
| ALEXANDER BARROS MILLAN, | ) | CASE NO. 4:25-cv-02779 |
| | ) | |
| Petitioner | ) | DISTRICT JUDGE |
| | ) | CHARLES ESQUE FLEMING |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN ED VOORHIES, et al., | ) | REUBEN J. SHEPERD |
| | ) | |
| Respondents.[1] | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction and Procedural History

On December 23, 2025, Petitioner Alexander Barros Millan ("Millan") filed an application for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF Doc. 1). On January 5, 2026, the matter was referred to me for a report and recommended decision. (Non-document entry of Jan. 5, 2026).

Under 28 U.S.C. § 2243, on January 6, 2026, I ordered Respondents to provide their written response to the Petition (ECF Doc. 3), which they[2] did on January 9, 2026 (ECF Doc. 4). Upon first review, I found Respondents' submission deficient and ordered they supplement with documentation to support on what authority petitioner is being held. (Non-document entry of Jan. 12, 2026). Respondents supplemented their response on January 13, 2026, and again on January 14, 2026. (ECF Docs. 8, 11, 12, and attachments). I then held a hearing pursuant to

---

[1] In their brief, Respondents (except for NEOCC Warden Voorhies) state in a footnote that DHS Secretary Noem and Attorney General Bondi are not proper respondents here, because only the Field Office Director for ICE may issue a writ of habeas corpus. (ECF Doc. 4, p. 10 n.1). Finding that the Detroit Field Office Director Kevin Raycraft is named as a Respondent and may therefore issue the writ as to Millan, I proceed.

[2] Respondent Warden Ed Voorhies did not make an appearance or otherwise respond.

1

§ 2243 on January 14, 2026. The parties presented argument as to the basis for Millan's

detention, *i.e.*, whether 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a) properly applied to him, and

requested to further supplement with post-hearing briefs. I granted this request and permitted the

parties to supplement by January 23, 2026. (ECF Docs. 13, 14).

The matter is fully ripe.

## II.    Factual Background[3]

Millan is a citizen of Venezuela. (ECF Doc. 1, Pet., ¶ 19; ECF Doc. 4-1, p. 1). He applied

for entry into the United States via the CBP One app, and appeared for an appointment with a

Customs and Border Patrol ("CBP") Officer on September 22, 2023. (ECF Doc. 1, ¶¶ 7b, 33;

ECF Doc. 4-1, pp. 1-3). He was referred to Passport Control Secondary for further inspection

and was processed for a Notice to Appear ("NTA") and proceedings pursuant to Immigration and

Nationality Act[4] ("INA") 240. (ECF Docs. 1, ¶ 33; 4-1, p. 3). The CBP officer found Millan was

an arriving alien and inadmissible under INA 212(a)(7)(A)(i)(I).[5] (ECF Docs. 4-1, p. 3; 4-2, p. 1).

The CBP officer paroled Millan into the United States for two years pending his immigration

proceedings, under INA 212(d)(5), and issued him an NTA requiring him to appear before the

Cleveland immigration court on June 24, 2024 at 1:00 p.m. (*Id.*). The officer also informed

Millan of his rights and responsibilities, including appearing for all immigration proceedings,

---

[3] At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" without converting to summary judgment. *Id.*, quoting *Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).
[4] INA § 240 corresponds to 8 U.S.C. § 1229a. This report and recommendation uses the INA sections as provided in the immigration documents themselves, but otherwise refers to the United States Code sections where applicable.
[5] 8 U.S.C. § 1182

provide a mailing address to DHS, apply for asylum within one year, and surrender himself to DHS if he becomes subject to a final order of removal. (ECF Doc. 4-2, p. 2).

Millan applied for asylum on September 20, 2024. (ECF Doc. 4, p. 10). On April 4, 2025, he was emailed a notice that his parole would be terminated and notifying him that he would be subject to removal unless he had otherwise obtained a lawful basis to remain in the United States. (ECF Docs. 12, p. 1; 12-1). His parole status expired on April 18, 2025. (ECF Doc. 8-1). The work authorization issued pursuant to his parole was revoked on May 29, 2025. (ECF Doc. 8-2).

Millan presents that he has not missed an interview, hearing, or check-in for his immigration matters. (ECF Doc. 1, ¶ 34). He has a wife and three daughters in the United States. (*Id.*, ¶ 35).

Millan was detained on July 15, 2025 when Homeland Security Investigation agents encountered his vehicle, ran the plates, and the law enforcement database search revealed he was unlawfully present in the United States. (ECF Doc. 13-1, p. 2). That day, Millan was processed as a custody redetermination and placed in removal proceedings. (*Id.* at p. 3). Millan has now been in custody for over six months. (*Id.*, ¶¶ 7, 19; ECF Doc. 4, p. 10). He is being held at the Northeast Ohio Correctional Center ("NEOCC"). (*Id.*).

In early September 2025, he appeared at a hearing before an immigration judge ("IJ") along with immigration counsel. (ECF Doc. 1, ¶ 3). That counsel did not file for immigration bond on his behalf. (*Id.*). Millan asserts the reasoning for not seeking release on bond was because that counsel agreed with the IJ that he was an "arriving alien" and the IJ was without jurisdiction to grant bond. (*Id.*).

Millan now petitions this Court for habeas corpus relief, asserting that he is being detained unlawfully in contravention to his statutory rights under the INA, and against his due process and equal protection rights under the U.S. Constitution. (ECF Doc. 1, ¶¶ 26-37). He requests that this Court assume jurisdiction over his habeas proceedings, issue a writ that he be released within one day, or, alternatively, issue a writ that he be released unless Respondents provide a discretionary bond hearing under 8 U.S.C. 1226(a) within seven days; and award attorney's fees and costs as provided in the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412. (ECF Doc. 1, p. 6).

## III. Legal Standard

The Constitution guarantees that, absent suspension, the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), citing U.S. Const.., Art I, § 9, cl. 2. Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The writ is established to ensure that the government "does not detain individuals except in accordance with law" and permits all persons to challenge the lawfulness of their confinement, regardless of status. *Hamdi*, 542 U.S. at 525.

### A. Section 2241 Proceedings

Federal district courts are limited in their relief under § 2241 when considering immigration cases. *See, e.g.*, *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding a district court lacks jurisdiction to consider removal orders); *see also* 8 U.S.C. § 1252(g) (giving the Attorney General of the United States exclusive jurisdiction over removal proceedings). This Court may not grant habeas relief as to the underlying immigration question, *i.e.*, a removal

4

question. *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g)" for challenges regarding the legality of removal orders). However, the district court may review whether an alien is lawfully detained; the Attorney General's immigration authority[6] does not abrogate § 2241's authority to grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody).

To that end, this Court may still interpret immigration statutes applied against a petitioner to discern whether the detention is lawful or not. *See id.*; *see also* 8 U.S.C. § 1252(e)(5) (stating that the court's inquiry is limited to determine whether an order under § 1225(b)(1) was issued and whether it relates to a petitioner). Congress has further limited habeas review for certain classes of immigrants, namely, aliens under 8 U.S.C. 1225(b)(1) who are "arriving in the United States and . . . who have not been admitted or paroled." For those aliens, § 1252(e)(2) allows habeas review of three matters: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed"; and (3) whether the petitioner can prove that they have been granted entry as a lawful permanent resident, refugee, or asylee. 8 U.S.C. §§ 1252(e)(2)(A)–(C).

In no instance may this Court determine whether an alien is in fact inadmissible or otherwise entitled to relief from removal.  *E.g.*, *id.* § 1252(e)(5).

---

[6] Although authority is statutorily vested in the Attorney General, immigration enforcement, and administration functions were transferred to the Secretary of Homeland Security by the Homeland Security Act of 2002. Pub. L. No. 107-296, 116 Stat. 2135 (2002). However, the Attorney General's discretionary detention authority under § 1226(a), delegated to immigration judges, "is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

### B. Interpretation of Immigration and Nationality Act Sections 1225(b) and 1226(a)

To begin with general provisions of immigration law, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission." *Thuraissigiam*, 591 U.S. at 108. Aliens who are detained trying to enter elsewhere are treated similarly. *Id.*, citing 8 U.S.C. §§ 1225(a)(1), (3). Yet "several classes of aliens are 'inadmissible' and therefore 'removable.'" *Id.* at 107-08 (2020), quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A). Among these are aliens who lack valid documentation "at the time of application for admission." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

The removal process provides for an evidentiary hearing before an immigration judge, where the alien may challenge their removal, including applying for asylum. *Thuraissigiam*, 591 U.S. at 108 (internal citations omitted). Should their claim be rejected, the alien may appeal the removal order to the Board of Immigration Appeals ("BIA"), and may also have a right to review in a federal court of appeals. *Id.* While their removal proceedings are being litigated, the alien will generally be detained. *Id.* However, the classification of the alien determines whether that detention is mandatory or discretionary. *Compare* 8 U.S.C. §§ 1225(b)(2)(A) *with* 1226(a).

Thus, relevant to the present inquiry are 8 U.S.C. §§ 1225(b) and 1226(a), both of which govern detention of noncitizens pending removal proceedings. Section 1225 governs the expedited removal process and requires mandatory detention under its provisions, while § 1226 permits discretionary release from detention for certain aliens.

### 1. 8 U.S.C. Section 1225(b)

Section 1225 controls the Government's determination of the admissibility of aliens seeking to enter the country, which "generally begins at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). This section provides for inspection by

immigration officers, and expedited removal of, certain arriving aliens, *i.e.,* "applicants for admission" who are "present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. §§ 1225(a)(1), (3).

During inspection, an immigration officer may determine an alien to be inadmissible and order they be removed without further hearing or review. *Id.* § 1225(b)(1)(A)(i). An applicant for admission is subject to expedited removal if they (1) are inadmissible for lack of a valid entry document; (2) have not been physically present in the United States continuously for two years before the determination of inadmissibility;[7] and (3) are among those designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109, citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)-(II). In certain circumstances, an applicant can avoid expedited removal by claiming asylum. *Id.* at 108-09; *see also* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B).

In addition to expedited removal proceedings, § 1225 carries with it certain mandatory detention clauses. 8 U.S.C. § 1225(b)(1)(B); 8 U.S.C. § 1225(b)(2)(A). One section governs the asylum officers during their interview of aliens seeking asylum, and states that any applicant for admission who claims asylum "shall be detained" for further consideration of the asylum claim, or until determination of a credible fear of persecution, or "until removed," as applicable. 8 U.S.C. §§ 1225(b)(1)(B)(ii); (iii)(IV).

The second states that, for other aliens who are applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings under section 1229a, unless an exception applies. 8 U.S.C. § 1225(b)(2)(A). It is this portion of

---

This section describes the aliens subject to its provisions as "an alien . . . who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

the statute that is at issue in the months since implementing new DHS policy on January 24, 2025, and since the BIA's decision in *Matter of Yajure Hurtado*, discussed *infra.*

### 2.    8 U.S.C. Section 1226(a)

Section 1226 generally governs the process of arresting and detaining aliens once inside the United States. *Jennings*, 583 U.S. at 288. Under § 1226(a)'s "default rule," the Attorney General may issue a warrant for an alien's arrest, and provide for the alien's detention pending a removal decision. *Id.*, citing 8 U.S.C. § 1226(a). Section 1226(a) outlines a framework for detention: The Attorney General "may continue to detain the arrested alien"; "may release the alien on bond of at least $1,500" or "may release the alien on conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Release, however, does not permit work authorization. *Id.* § 1226(a)(3).

The arresting immigration officer makes the initial detention determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Aliens may appeal that determination in a bond hearing before an immigration judge. *Id.* And, under § 1226(a)'s discretionary framework, the Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. § 1226(b).

Congress amended 8 U.S.C. § 1226 to add mandatory detention for certain criminal aliens, as codified in § 1226(c) through the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). This section "carves out a statutory category of aliens who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. The Attorney General must detain an alien who is (1) inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation; and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny,

8

shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

In short, as the Court stated in *Jennings*, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under § 1226(a)[.]" 583 U.S. at 289 (emphasis added).

### C.    DHS policy and *Matter of Yajure Hurtado*

As above, § 1225 controls border inspection processes and the expedited removal of "arriving aliens." "Expedited removal proceedings do not include the right to appeal to an IJ, the BIA [Board of Immigration Appeals], or (aside from two narrow exceptions) a judicial court." *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *2 (N.D. Ohio Oct. 16, 2025); *see also, e.g.*, 8 U.S.C. §§ 1225(b)(1), (c); 1252(a)(2)(A), (e). "Noncitizens are eligible for expedited removal if they are: (1) 'arriving in the United States,' that is, appearing at a port of entry; or (2) have 'not been admitted or paroled into the United States' and they cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" *E.V.*, 2025 WL 2938594, at * 2, quoting 8 U.S.C. § 1225(b)(1). The DHS Secretary, as delegated by the Attorney General, has the authority to designate the population of noncitizens within the second category who are subject to expedited removal. *Id.*, citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I).

Until January 2025, DHS had designated two classes in addition to "arriving aliens" as subject to expedited removal: (1) aliens arriving by sea within the last two years, and (2) aliens apprehended within 100 miles of an international border and within 14 days of entry. *Id.*, citing to *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of*

*the Immigration and Nationality Act*, 67 Fed. Reg 68924, 68924 (Nov. 13, 2002) *and Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877-01, 48877 (Aug. 11, 2004).

In January 2025, DHS implemented a new policy, now applying expedited removal proceedings to aliens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but less than two years." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139-01 (Jan. 24, 2025). Under this policy, DHS argues that all such aliens are "arriving aliens" and subject to expedited removal.[8] *E.V.*, 2025 WL 2938594, *2.

Then on September 5, 2025, the BIA issued an interim decision in the *Matter of Yajure Hurtado*, determining that aliens seeking admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and immigration judges lack jurisdiction to make bond determinations under this statute. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

On November 20, 2025, a federal district court in California found that DHS's policy of applying 8 U.S.C. § 1225(b)(2)(A) against all classes of immigrants and denying bond proceedings as described in *Matter of Yajure Hurtado* was arbitrary and capricious, and vacated that policy. *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *15-21 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). In addition to vacating the policy under the APA and rendering it a nullity, that court also certified a nationwide Bond Eligible class. *Bautista*, 2025 WL 3713987, at *32. The Bond Eligible Class includes:

---

[8] It appears that this policy has been applied more broadly in practice; in an earlier case before this Court, DHS has argued that a person who had been continuously present in the United States since 2001 was also an "arriving alien" and subject to § 1225(b)'s mandatory detention and expedited removal proceedings. *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-CV-2061, 2025 WL 3187080, at *1 (N.D. Ohio Nov. 14, 2025).

All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.[9]

*Id.*

## IV.    Discussion

With these foundational principles described, I turn to Millan's federal habeas petition.

### A.    This Court has jurisdiction over habeas corpus petitions, including Millan's.

I first address Respondents' argument that this Court is without jurisdiction to determine Millan's habeas corpus petition. (ECF Doc. 4, pp. 11-14).

### 1.    Sections 1252(g), (b)(9), and (e)(9) do not bar review here.

As their first point on the matter, Respondents argue that 8 U.S.C. § 1252(g) bars jurisdiction over claims "'arising from'" the Secretary of Homeland Security's decision to "'commence proceedings, adjudicate cases, or execute removal orders against any alien.'" (ECF Doc. 4, p. 11, quoting 8 U.S.C. § 1252(g) (emphasis omitted)). Respondents state that judicial review of Millan's claim is unavailable because this Court is without authority to review any claim that might be related to his underlying removal proceedings. (*Id.*). In support, they cite several cases from outside the Sixth Circuit, which are not binding on this Court. (*Id.*, citing, *e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)).

Respondents' expansive reading of Section 1252(g) is inapplicable in the Sixth Circuit. As addressed above, federal district courts may consider a federal habeas petition under 28 U.S.C. § 2241 without disturbing the petitioner's underlying immigration case or the Secretary's

---

[9] Millan entered the United States *with* inspection and it appears at first blush that he does not fall within the *Bautista* Bond Eligible Class. Nevertheless, as discussed in more detail *infra*, Millan is still entitled to relief on the merits of his own petition and I make such recommendation without finding it necessary to consider whether he is a member of the *Bautista* Bond Eligible Class.

executable removal orders. This Court does not have jurisdiction over the petitioner's underlying immigration case and it cannot decide whether to detain under an immigration statute. *See, e.g.*, *Hamama*, 912 F.3d at 876 *and Hamama v. Adducci*, 946 F.3d 875, 877 (6th Cir. 2020) ("*Hamama II*"). The Sixth Circuit has stated that 1252(g)'s jurisdictional bar prevents a district court from enjoining or restraining the operation of one of the covered statutes, even in the habeas context. *Hamama II*, 946 F.3d at 877.

But 1252(g) does not prevent a district court's review of the lawfulness of the alien's detention itself. As applied in the Sixth Circuit, the jurisdictional bar in § 1252(g) does not abrogate § 2241's authority to grant the writ where the immigrant's detention was unlawful. *See, e.g.*, *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022); *see also Thuraissigiam*, 591 U.S. at 117. With respect to removal orders, federal district courts have no jurisdiction to consider the decision to "execute removal orders." 8 U.S.C. 1252(g). But the Sixth Circuit interprets 1252(g) "as referring to *executable* removal orders—that is, existing and enforceable removal orders subject to execution." *Enriquez-Perdomo*, 54 F.4th at 863. When an alien otherwise has lawful status in the United States, the removal order is not subject to execution, and a federal district court is not barred by 1252(g). *Id.* The Sixth Circuit did not limit this reading only to enforceable removal orders and stated that principles of statutory construction favor judicial review of administrative action even in immigration cases, because the statutory scheme as a whole supports the availability of limited habeas review. *Id.* at 863 n.6.

Case-in-point is Respondents' next argument that 8 U.S.C. § 1252(b)(9) and § 1252(a)(5) bar this Court's review of Millan's claims, and that he is not challenging the type of issues contemplated is § 1252(e)(2). (ECF Doc. 4, pp. 12-14). Applying simple principles of statutory interpretation leads to the conclusion that Section 1252(g)'s exclusive jurisdiction provision

would render superfluous the other provisions limiting this Court's review. *E.g.*, 8 U.S.C. §§ 1252(a)(5); (b)(9); (e). A too-expansive reading of 1252(g) to bar all federal district court review of any claim that arises from immigration actions would swallow other provisions of that act that also place limits on a federal court's review. *Enriquez-Perdomo*, 54 F.4th at 863 n.6; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

First, Section 1252(b)(9). Respondents state that because Millan is challenging the basis on which he is detained, Section 1252(b)(9) requires he raise his claims before the Sixth Circuit, not before this Court. (ECF Doc. 4, p. 14). But section 1252(b)(9)'s "zipper clause" does not apply to bar the district court's jurisdiction over Millan's claims. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") authorizes noncitizens to obtain direct "review of a final order of removal" in a court of appeals. 8 U.S.C. § 1252(a)(1). In this context, a "final order of removal" is a "final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020), quoting 8 U.S.C. § 1101(a)(47)(A). The relevant subsection here states that judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" is not available in federal habeas review. 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that a petition for review must be filed with the appropriate court of appeals as the "sole and exclusive means for judicial review of an order of removal."

The IIRIRA provides for expedited judicial review of final orders of removal by "consolidating" the alien's "various challenges arising from the removal proceedings" in a petition for review by the courts of appeals and "eliminating review in the district courts." *Nasrallah*, 590 U.S. at 580 (internal quotations and marks omitted). Thus the "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of

13

judicial review" under section 1252(b)(9)'s direct review consolidation provisions. *Nasrallah*, 590 U.S. at 982. Orders that do not affect the validity of the final order of removal do not merge into the final order of removal and are therefore not subject to 1252(b)(9)'s limitations. *Nasrallah*, 590 U.S. at 982 (applying to Convention Against Torture orders).

Millan's challenge in his federal habeas petition is not directed to his removal proceedings – it is axiomatic that habeas petitions are directed to the legality of the confinement itself. This court is vested with the power to issue the writ for all persons, including non-citizens, who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Millan is not challenging matters that would merge into any final order of removal, nor is he asking this Court to decide matters related to his pending immigration claims. Rather, Millan challenges the legality of his confinement itself, a matter which this Court has jurisdiction to decide. *Dornveil v. Noem*, No. 4:25-CV-1809, 2025 WL 2720786, at *3 (N.D. Ohio Sept. 24, 2025) (exercising jurisdiction over detention-based claims because they did not challenge the petitioner's removal proceedings).

Next, Respondents assert:

> Congress severely limited this Court's jurisdiction to three narrowly tailored issues: whether petitioner is an alien; whether the petitioner was ordered removed; and whether petitioner has been lawfully admitted and such status has not been terminated. 8 U.S.C. § 1252(e)(2). Petitioner is not challenging any of those three things in the Petition; therefore, the statute does not confer this Court with jurisdiction.

(ECF Doc. 4, p. 14). Respondents correctly state the limitations on this Court's review found in 8 U.S.C. § 1252(e)(2). However, that section is limited to "judicial review of orders under Section 1225(b)(1)." 8 U.S.C. § 1252(e)(2). As discussed throughout this case, Millan challenges the legality of his confinement as permitted through 28 U.S.C. § 2241, a matter distinct from any challenges in his removal, asylum, or other immigration proceedings. The subsection governed

14

by § 1252(e)(2) is not at issue here. The government, in both its briefing and during the hearing before this Court, asserted that § 1225(b)(2)(A) applies to Millan; he contends § 1226(a) applies. And because § 1225(b)(1) is not at issue, this Court's review is not limited by its strictures.

I therefore recommend the District Court deny Respondents' request to dismiss and that it should exercise jurisdiction over Millan's federal habeas petition.

### B.     Administrative exhaustion is not required here.

Respondents next argue that Millan must exhaust his administrative remedies before seeking habeas relief. (ECF Doc. 4, pp. 14-15). In short, Respondents state that because he is in removal proceedings in immigration court, he must turn there for relief and await that court's determination, which may moot this habeas petition. (*Id.* at p. 15).

No applicable statute requires administrative exhaustion here; the decision is left to this Court's discretion. "When Congress has not clearly required exhaustion, sound judicial discretion governs whether or not exhaustion should be required." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (internal quotation and marks omitted). The Sixth Circuit has not yet determined whether administrative exhaustion should be required in the context of a noncitizen's habeas petition challenging the administration's policy of mandatory detention. *Gil Pirona v. Noem*, No. 1:25-CV-1571, 2025 WL 3687339, at *2 (W.D. Mich. Dec. 19, 2025). Courts within the Sixth Circuit have applied the following test to determine whether prudential exhaustion should apply:

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

15

*Mendoza v. Raycraft*, No. 4:25CV2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025),

quoting *Puga v. Cherthoff*, 488 F.3d 812, 815 (9th Cir. 2007).

     Applying these factors, prudential exhaustion should not be required of Millan.

     As discussed above, a habeas petition in a federal district court is distinct from that petitioner's proceedings in immigration court. With this petition, Millan challenges the lawfulness of his confinement, not the immigration court's determinations in his removal proceedings. *See* 28 U.S.C. 2241. Thus, development of the record in Millan's immigration case is not required for this Court to reach its decision on the legality of his confinement – and such development would be imprudent and unnecessarily muddy the waters between Millan's removal proceedings in immigration court and his habeas proceedings here. The first factor is not met.

     The same reasoning applies for the second factor. A habeas petition under these conditions serves a distinct purpose and is not intended to bypass the administrative scheme of Millan's removal proceedings. The question of Millan's removal is not at issue here; the question before this Court is whether he is lawfully detained or whether he has received due process for that detention. These questions fall squarely for federal courts to determine, not administrative agencies, and thus is not addressed within the administrative scheme. A habeas petition does not bypass the administrative scheme, and therefore, the second factor is not met.

     The third factor is not as straightforward. Certainly, where administrative channels are available, a habeas petitioner should first attempt those channels before seeking relief in the district court. But here, it is unclear what administrative remedy Respondents expect Millan to avail himself of. As they provide in their brief: "Petitioner has not availed himself of the administrative remedies available to him. Petitioner is still in removal proceedings. A hearing on DHS's motion to pretermit is scheduled for January 15, 2026. This hearing may moot out the

case sub judice." (ECF Doc. 4, p. 15). As discussed herein, the merits of Millan's removal proceedings are not at issue before this Court. The question here is whether or not the correct law – and consequently, the correct detention scheme – is applied to him, and the due process protections attendant on that application. As respondents have stated, Millan is subject to mandatory detention and that he is ineligible for a bond hearing. And as Respondents explained at the January 14, 2026 show cause hearing, the proceedings in immigration court are not to consider the merits of Millan's pending asylum claim; the motion to pretermit is intended to administratively close that claim without ever considering it on the merits. Those questions are separate from the issues before this Court. A review of the lawfulness of Millan's confinement is therefore not mooted. The third factor is not met here.

I recommend the District Court not require prudential exhaustion and consider the merits of Millan's petition.

### C.        Section 1225(b)(2)(A) does not apply to Millan.

As § 2241 permits, I turn to whether § 1225(b)(2)(A) or § 1226(a) applies to Millan, and whether the Government may now apply *Matter of Yajure Hurtado* in his case to divest the immigration courts of jurisdiction to consider discretionary detention.

The last four months since *Matter of Yajure Hurtado* was decided have seen an overwhelming surge of habeas petitions in district courts across the country. By last count, over 1,000 district court decisions have been issued, with more than 200 of them issuing from courts within the Sixth Circuit. *Matter of Yajure Hurtado citing references*, Westlaw (filtered by jurisdiction) (last accessed Jan. 28, *2026).* Overwhelmingly, district courts have disagreed with the agency's interpretation of Section 1225(b)(2)(A)'s mandatory detention scheme and applying

17

it to all immigrants who have applied for admission but have not reached a final determination on the merits. *See id.*

These district courts have provided thorough discussion of the principles of statutory interpretation, the statutory scheme of each section, Congressional intent, and the ways in which the Government's proposed interpretation is inappropriate. *See, e.g.*, *Gil Pirona*, 2025 WL 3687339, at *3-*6 (W.D. Mich. Dec. 19, 2025); *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3466682, at *5-*13 (W.D. Ky. Nov. 27, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, (E.D. Mich. Sept. 9, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, (W.D. Ky. Sept. 19, 2025); *and Singh v. Lewis*, No. 4:25-CV-96-RGJ, 2025 WL 2699219, (W.D. Ky. Sept. 22, 2025). I agree with our sister courts' interpretation of the statutory text and decline to reinvent the wheel by adding my own discussion of the matter, particularly when a petitioner has remained in detention without the possibility of appeal for over six months. Rather, with a nod to my fellow courts and in the interest of judicial economy, I follow *Singh* in incorporating their reasoning by reference. *Singh*, 25 WL 2699219, at *3.

I now turn to which statute is appropriately applied to Millan. Millan alleges that he was improperly denied a bond hearing by a Cleveland IJ because he was an "applicant for admission" – despite having resided in the United States since being paroled in through the CBP One app in September 2023. (ECF Doc. 14, p. 5). He presents that he has completed his inspection by an immigration official and passed a credible fear interview. (*Id.*; *see also* ECF Docs. 1, ¶¶ 7b, 33; ECF Doc. 4-1, pp. 1-3; 4-2, p. 1 ). That CBP officer paroled Millan into the United States for two years pending his immigration proceedings. (*Id.*). Because of this, Millan asserts he is no longer an "arriving alien" under the statute – he was lawfully living within the United States under that parole status, making 8 U.S.C. § 1226(a) applicable to him. (ECF Doc 14, p. 6). Millan also

questions why the government sought a warrant – required under 1226(a) – after his initial arrest, but now asserts that 1225(b)(2) – with no warrant requirement – applies to him. (*Id.*).

   The Government's arguments that 1225(b)(2) now applies to Millan fall flat. In essence, Respondents state that because Millan has not yet been conferred status, he continues to be an "arriving alien" for as long as his immigration case is pending, because he has not yet been "admitted," and parole does not qualify as admission. (ECF Docs. 4, pp. 17-22; 13, pp. 2-5). Respondents' arguments for applying 1225(b)(2)(A) against Millan are not well taken. (*See id.*).

   As Respondents correctly state, "*Jennings* found that 8 U.S.C. § 1225(b) 'applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute).'" (ECF Doc. 4, p. 22, quoting *Jennings*, 583 U.S. at 297). Respondents further argue,

> Section 1225(a) defines "applicant for admission" to encompass an alien who either "arrives in the United States" or who is "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). And "admission" under the INA means not physical entry, but *lawful entry after inspection by immigration authorities.* 8 U.S.C. § 1101(a)(13)(A); *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). Thus, an alien who *enters the country without permission* is and remains an applicant for admission, regardless of the duration of the alien's presence in the United States or the alien's distance from the border. In turn, Section 1225(b)(2) provides that "an alien who is an applicant for admission" "shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1125(b)(2)(A).

(ECF Doc. 13, p. 4) (emphasis added). Even so, Respondents' arguments here are at cross-purposes with the application of 1225(b)(2)(A) in Millan's case and lead me to determine that 1226(a) applies.

   Millan did not enter the United States without permission. (ECF Doc. 4-1). Millan was granted entry into the United States by a CBP officer, after presenting for inspection and successful completion of an interview. (*Id.*). Section 1225(a) states that "an applicant for

admission" – someone who "has not been admitted or who arrives in the United States," is required to be inspected by an immigration officer, describe their purposes for seeking admission, and whether they are otherwise inadmissible. §§ 1225(a)(1),(3),(5). Section 1225(b)(2)(A), which Respondents now seek to apply retroactively against Millan, states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained. . . ." On this basis, Respondents have detained Millan and assert that IJs are without jurisdiction to consider discretionary bond.

But here, Millan has submitted for inspection to an immigration officer, provided his reasons for seeking admission, acknowledged that he is otherwise inadmissible, and has applied for asylum. He was paroled into the United States, and complied with all requirements asked of him until his parole was revoked without further explanation. As such, his entry into the United States was done after inspection by an immigration officer, and was lawful. Thus, by Respondents' own arguments, Section 1225 no longer applies to him.

And even though Millan remained in the United States after his parole was revoked, the statutory text does not immediately lead back to applying Section 1225. Millan was granted discretionary parole under 8 U.S.C. 1182(d)(5)(A). (ECF Doc. 4-1). That section states discretionary parole is permitted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit" and may be revoked when the Secretary of Homeland Security deems "the purposes of such parole . . . have been served[.]" 8 U.S.C. 1182(d)(5)(A). The section explicitly states that parole is not admission. *Id.* But it does not necessarily follow that a parolee is continually held in a limbo-state of being an "applicant for admission." Rather, once lawful parole has been granted, "paroled noncitizens cannot be subject to expedited removal

proceedings [*i.e.*, proceedings described in § 1225]." *Gil Pirona*, 2025 WL 3687339, at *4 (W.D. Mich. Dec. 19, 2025) (collecting cases).

This Court and others have rejected the notion that *Thuraissigiam*'s statement "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border," 591 U.S. at 139, extends to treating all aliens as continually "arriving" when applying § 1225(b)(2)(A) against them. *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *3 (N.D. Ohio Oct. 16, 2025), citing *Coal. for Humane Immigrant Rights v. Noem*, No. 1:25-cv-00872-JMC, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025), *appeal pending* 25-5289 (D.C. Cir. Aug. 11, 2025)); *see also Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, *12 n.15 (D.D.C. Aug. 29, 2025). Those cases look to the plain meaning of the term "arrive" to determine the label of "arriving alien" is inapplicable to someone who previously reached a port of entry, underwent inspection, and then was paroled into the country. *E.V.*, 2025 WL 2938594, at *3. As this Court has stated, "'the only way to make sense of the statutory scheme Congress created is to see that parolees fall under neither [provision of Section 1225(b)(1)]. Any other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's words.'" *Id.*, quoting *Coalition*, 2025 WL 2192986, at *39.

Furthermore, Millan's case is easily distinguished from the reasoning in *Thuraissigiam*: his entry into the United States was lawful and done after presentation to a port of entry where he was detained for questioning and released into the United States under standard removal proceedings to seek asylum more formally, which he has since done. *Thuraissigiam* does not require this Court to deem Millan a continual "arriving alien" under § 1225 simply because he remains an applicant for admission as a parolee. It is a "settled proposition that noncitizens on

21

the threshold of initial entry stand on a different footing than those who have passed through our gates." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *11 (D.D.C. Aug. 29, 2025). Because Millan properly entered the United States and was granted parole under Section 1182(d)(5)(A), he is not subject to the expedited removal or detention provisions described in Section 1225; he must be afforded process according to 1226(a). *Gil Pirona*, 2025 WL 3687339, at *4 (W.D. Mich. Dec. 19, 2025).[10]

District courts in the Sixth Circuit and across the country agree in the application of § 1226(a) in cases like Millan's, including *Pizarro Reyes*, 2025 WL 2609425, at *7-9 (holding that the text, legislative history, and agency guidance support the argument that § 1226, not § 1225 applies); *Lopez-Campos, v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 ("the Court finds that Lopez-Campos is not subject to the provisions of Section 1225(b)(2)(A). Rather, he clearly falls under the provision of Section 1226(a), and is subject to the discretionary bond determination outline therein."); *Kozubaev v. Lynch*, No. 1:25-CV-1873, 2026 WL 116797, at *2 (W.D. Mich. Jan. 15, 2026) ("The Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested . . . .") (collecting cases); *Baabekov v. Raycraft*, No. 1:26-CV-37, 2026 WL 183515, at *2 (W.D. Mich. Jan. 23, 2026) (same).

---

[10] *Gil Perona* also regards a Venezuelan citizen who presented for inspection through the CBP One app and was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and also had a pending asylum application during his later parole revocation and detention. In this and similar cases where humanitarian parole was revoked, the district court found that, just as humanitarian parole may be granted only on a "case-by-case basis," 8 U.S.C. 1182(d)(5)(A), it may only be revoked after an individualized determination that the humanitarian purpose or public benefit that justified granting the parole no longer applies. *Gil Pirona*, 2025 WL 3687339, *4-5 (collecting cases). On that basis, the district court determined that the revocation of parole was improper and ordered the petitioner's release, subject to the prior conditions of parole. *Id.* at *9. It is unclear whether Millan's parole revocation underwent an individualized determination or what effect his pending asylum application might have with respect to his ability to remain in the United States absent parole. (*see* ECF Doc. 12-1).

The Government may not now make a redetermination and reinterpret the statute against Millan, particularly where it has done so without affording him due process, as I discuss next.

I therefore determine § 1226(a) is properly applicable to Millan.[11]

**D.      Millan's continued detention violates his Due Process and Equal Protection rights and counsels granting the writ.**

Having determined that § 1226(a) applies to Millan, I turn to whether his detention without a bond hearing denies him due process.

The Due Process Clause extends to all persons regardless of status, including non-citizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). "[O]nce an alien enters the country . . . the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Millan is thus still afforded constitutional protections regardless of his immigration status.

**1.      Substantive Due Process**

As a general matter, substantive due process protects individuals from arbitrary government action that infringes on their fundamental rights, including the right to liberty. *Rosales-Garcia v. Holland*, 322 F.3d 386, 408 (6th Cir. 2003). In the immigration context, "an alien's status as removable is alone insufficient to outweigh his constitutionally protected liberty interest." *Id.*

---

[11] With this determination, I find it unnecessary to consider whether Millan is a member of the Bond Eligible Class in *Bautista* and decline to apply it here. (ECF Doc. 1, ¶¶ 1-10; *see also Bautista v. Santacruz,* No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (order granting partial summary judgment to named Plaintiffs-Petitioners); *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025)). As discussed herein, Millan is entitled to consideration for release on bond under 8 U.S.C. § 1226(a) – the same relief he requests as a putative member of that class. (ECF Doc. 1, ¶¶ 26-31).

It is permissible for immigrants to be detained pending their removal proceedings, even under a mandatory detention structure. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) (upholding the constitutionality of mandatory detention under § 1226(c) for certain criminal aliens during removal proceedings, where such detention is brief and serves the legitimate government purposes of ensuring the alien's presence at removal hearings and protecting the public from potential harm). Thus, the BIA's decision in *Matter of Yajure Hurtado* does not violate an alien's substantive due process in the abstract. *See, e.g.*, *Azalyar v. Raycraft*, No. 1:25-CV-916, 2026 WL 30741, at *4 (S.D. Ohio Jan. 2, 2026). Instead, the issue before this Court is "whether those policies have been applied in an unconstitutional manner." *Id.* (internal quotations and marks omitted).

Here, Millan is detained pending his removal proceedings, but has been refused the opportunity for a bond hearing. Yet the government's own arguments here point to a misapplication of the statutory provisions in Millan's case. He was initially granted lawful entry into the United States, but his parole was later revoked. On that basis, the government may seek to remove him, and his continued detention during the pendency of removal proceedings would not necessarily violate his substantive due process rights. *Demore*, 538 U.S. at 528-29. (distinguishing that detention pending removal proceedings does not violate due process because the conclusion of removal proceedings provides a definite end date for detention). However, the blanket application of § 1225(b)(2)(A)'s mandatory detention against Millan where 1226(a)'s discretionary detention provisions should apply does create a due process violation, as I now discuss.

2.        **Procedural Due Process**

Procedural due process requires the government provide adequate safeguards to ensure against arbitrary deprivation of an individual's liberty interest, including the ability to challenge the basis for detention. *See Lopez-Campos*, 2025 WL 2496379, at *10.

To determine the adequacy of process in the context of civil immigration detention, the Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Mathews* test).

a.        **Private interest**

It is undisputed that Millan has a significant private interest in not being detained. Indeed, freedom from detention is one of the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. And to be detained without the possibility of a bond hearing leaves Millan without recourse to relief or an affirmative end date for his release while his removal proceedings are being decided. *See Singh*, 2025 WL 2699219, at *4 (finding the first *Mathews* factor favored petitioner where continued detention infringed on his liberty interest). This factor favors Millan.

### b.    Risk of Error

The second *Mathews* factor also favors Millan, because, as above, he has been held in mandatory detention through a misapplication of § 1225(b)(2)(A)'s mandatory detention provisions against him. And "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright Ent.*, 603 U.S. at 413. Other district courts confronted with similar issues as are present here have determined that there is a significant risk of error in the misapplication of these provisions, particularly where, as here, the petitioner has a pending asylum claim. *Make the Rd. New York*, 2025 WL 2494908, at *14-18.

In Millan's case, immigration officials, vested with authority delegated by Congress to the Attorney General and DHS, granted Millan humanitarian parole lawful entry into the United States after inspection. (ECF Doc. 4-1). That parole may be revoked and require Millan to leave the United States and thereafter seek entry anew. (*See* 8 U.S.C. 1182(d)(5)(A); ECF Docs. 12-1, 13-1). But the government may not retroactively choose to revoke the lawfulness of his entry in September 2023[12] and withdraw the discretionary bond procedures provided under 1226(a) to people who have been granted lawful entry. *See Jennings*, 583 U.S. at 303 ("As noted, § 1226 applies to aliens already present in the United States."). The unilateral decision by the BIA to use *Matter of Yajure Hurtado* to extend a different statute to Millan's circumstances despite Supreme Court precedent stating otherwise now leaves his liberty interest at risk. The Government Respondents may not now extend the bounds of their authority to apply Section 1225(b)(2)(A) against him, and this Court must ensure proper application of the laws against Millan.

---

[12] I note that the documents describing Millan's arrest mistakenly state that he "illegally entered the US on or about 9/22/2023 at or near El Paso, TX." (*Compare* ECF Doc. 13-1, p. 2 *with* ECF Doc. 4-1, p. 3).

This misapplication may also have an adverse effect on Millan's removal proceedings, because "noncitizens cannot be in two parallel paths of removal proceedings." *Sanchez Ballestros v. Noem*, No. 3:25-CV-594-RGJ, 2025 WL 2880831, at *3 (W.D. Ky. Oct. 9, 2025). If an alien is first placed in full removal proceedings, they cannot later be subjected to expedited removal under § 1225(b)(1). *Id.* (collecting cases). To do so at this stage, without conducting a hearing or providing Millan other explanation as to his newly applied mandatory detention, places great risk on the erroneous deprivation of Millan's liberty interest.

### c.       The United States' Interest

The final *Mathews* factor concerns the United States' interest in the proceedings, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. In making this consideration, I recognize that the United States has an interest in meaningful immigration laws that advance its stated policies. I cannot, however, countenance the Government Respondents' position that Millan is now subject to Section 1225(b)(2)(A), may also be subject to expedited removal under that Section, and is subject to continued detention without the ability to request bond proceedings. It is not appropriate to use the "wrong" statute against any person to ensure their continued detention, whether or not the arrest itself was lawful. (ECF Doc. 13, pp. 5-6). The United States has an interest in consistent application of its laws and ensuring that those laws are applied under the proper means. Respondents, speaking for one branch of government, may not choose unilaterally when and how to apply duly enacted laws. *See Lopez-Campos*, 2025 WL 2496379, at *10.

Moreover, Respondents have not shown that it would be burdensome to continue applying § 1226(a)'s discretionary detention scheme against Millan. An immigration judge has jurisdiction under this provision to determine which aliens are granted release. Providing Millan

with an avenue for a bond hearing does not automatically ensure his release; rather, it affords him only the fundamental constitutional right to due process given to all persons within the United States, whether their presence here is lawful, unlawful, temporary, or permanent. *Zadvydas*, 533 U.S. at 693. Therefore, the final factor also weighs in Millan's favor.

For all of these reasons, I find that Respondents have misapplied § 1225(b)(2)(A)'s mandatory detention requirement against Millan and his continued detention without the possibility of a bond hearing violates his due process rights. Accordingly, I recommend the District Court grant Millan his Petition and require Respondents conduct a hearing no more than five business days thereafter to determine whether Petitioner is entitled to discretionary bond under § 1226(a) and consistent with this Court's determination.

## V.    Conclusion and Recommendation

Because § 1225(b)(2)(A) is inapplicable to Petitioner, Respondents may not now impose mandatory detention against him pending his removal decision under § 1225(b)(2)(A) and *Matter of Yajure Hurtado*. I therefore recommend the District Court grant Millan's Petition and require Respondents hold a hearing no more than five business days thereafter to determine whether Petitioner is entitled to discretionary bond under § 1226(a) and consistent with this Court's determination. Because of the foregoing, I make no recommendation as to whether Petitioner is a member of the *Bautista* Bond Eligible Class.

Dated: January 30, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).